[Civ. No. 21668. Second Dist., Div. Three. Nov. 27, 1956.]

N. LINDSAY SOUTH, Appellant, v. H. A. WISHARD et al., Respondents.

Lawrence W. Young and James C. Janjigian for Appellant.

J. E. Simpson for Respondents.

SHINN, P. J.—Plaintiff South appeals from a judgment of dismissal as to defendants Harry A. Wishard and Stella Wishard, his wife, following the sustaining of their demurrer to plaintiff's second amended complaint without leave to amend. The property in litigation consists of overriding oil and gas royalties from wells in Fresno County and sums derived therefrom. Plaintiff alleges that he is the owner of 1/16th of 100 per cent of production from the land, which royalty interest stands in the name of Harry A. Wishard, who holds the same for the use and benefit of plaintiff as trustee of a constructive trust. The complaint also names as a defendant Maudine Brown, who filed an answer alleging she claims an interest in the property adverse to the plaintiff.

The record to be considered consists of the complaint, the demurrer of defendants Wishard and certain records of the United States General Land Office, copies of which were lodged with the trial court on the hearing of the demurrers. These are records of which the court takes judicial notice. They show the fee title to the land is in the United States and that the rights to royalties flow from a government oil and gas lease. The complaint is to be read as if it incorporated all the pertinent facts which were shown by the land office records. (*Livermore* v. *Beal,* 18 Cal.App.2d 535 [64 P.2d 987].) It is shown by those records that the government issued a prospecting permit to Lena S. Gatchel and later a lease of the land to her assignee, Petroleum Securities Corporation, reserving a 7½ per cent overriding royalty in the primary (discovery) acreage and a 2 per cent royalty in the secondary acreage. Gatchel assigned one-half of her royalty to Sumpf and he assigned to Wishard "an undivided one-sixteenth interest in all of my royalty interest as set out in the assignment above described." (This would not be 1/16th of 100 per cent of production as alleged by plaintiff, but 1/16th of 3 3/4 per cent, or a .2343 plus percentage of the whole.)

The complaint contains four causes of action. The first is against the Wishards and Brown to quiet title to the royalty interest. The second is against the Wishards alone. It re-

alleges ownership by plaintiff of the royalty interest but also alleges that legal title thereto was taken in the name of Harry A. Wishard in violation of an agreement to take the same in the name and for the use and benefit of plaintiff. The theory of this cause of action is that Wishard took title as trustee of a constructive trust by reason of his fraud and breach of agreement. This cause of action alleges the existence of a confidential relationship between plaintiff and Wishard, the making of allegedly false representations by Wishard, his concealment of the fact that he had acquired the royalty interest and other facts which plaintiff relies upon as excusing his long delay in bringing the action. Other facts are alleged respecting plaintiff's discovery of the fact that Wishard had taken title to the royalties in violation of the claimed agreement. The third and fourth causes of action incorporate the allegations of the second and add an allegation that Wishard took title as plaintiff's agent and an allegation that the Wishards have been unjustly enriched through the receipt of large sums as royalties.

The contentions of the defendants are (1) the holder of an equitable title cannot successfully sue to quiet title against the holder of the legal title; (2) the appeal should be dismissed upon the ground that the judgment in favor of the Wishards will not be appealable until judgment is rendered for or against Brown; (3) title to the leased land is in the United States and the government is an indispensable party; (4) the second, third and fourth causes of action do not allege sufficient facts to establish a constructive trust and (5) all causes of action are barred by the statute of limitations and laches.

The demurrer to the first cause of action was properly sustained. It was no broader than the second of the two must be regarded as a single cause of action. (*Ephraim* v. *Metropolitan Trust Co.*, 28 Cal.2d 824 [172 P.2d 501]; *South* v. *Wishard*, 123 Cal.App.2d 642 [267 P.2d 827].) While it is alleged that plaintiff is the owner of the royalty interest, that general allegation is controlled by the allegations of the second cause of action. Plaintiff is seeking to establish an equitable title. ■ His claim of equitable ownership will not sustain an action to quiet title against the holders of the legal title. It was so held in *South* v. *Wishard, supra,* 123 Cal.App.2d 642 (a former appeal in the same case). The first cause of action is insufficient as against the Wishards or Brown.

The material allegations of the second cause of action are: Plaintiff and Wishard were attorneys and friends of many years standing. They had their offices in the same suite and enjoyed an intimate business and social relationship. At all times mentioned in the complaint plaintiff believed implicitly in the integrity and truthfulness of Wishard and reposed in him great trust and confidence. Plaintiff had a client named Caine who informed him that he had acquired 2/16th of 100 per cent royalty interest from one Sumpf in consideration of his agreement to organize at his own expense and for Sumpf's benefit a California corporation. Caine proposed that plaintiff organize the corporation and as compensation agreed to assign to him 1/16th of 100 per cent of production from operations on the land under lease. Plaintiff communicated these facts to Wishard, telling him that he, plaintiff, might not be present when Caine and Sumpf came to the office but wished the matter to be taken care of for him and Wishard agreed that if they came while plaintiff was absent he, Wishard, would render the services and take an assignment of royalties in the name of and for plaintiff. Wishard, in plaintiff's absence, and without his knowledge, rendered the services and took an assignment of royalties from Sumpf in his own name. All this occurred in May 1933. In the summer of 1933 plaintiff inquired of Wishard what had been done in the Caine-Sumpf matter and Wishard told him that the parties had abandoned the plan of forming a corporation and that nothing had been done. Plaintiff believed that statement and having complete faith in the integrity and truthfulness of Wishard made no further inquiry until much later. In 1938 oil was discovered on the property. In 1939 Maudine Brown appeared on the scene claiming a royalty interest under an alleged assignment from Wishard in 1933. Her claim was disputed by Wishard. He told her the Caine-Sumpf plan had been abandoned, that any assignment from Sumpf was worthless and advised her not to record it. At the request of Wishard plaintiff made the same representations to Brown. In 1951 plaintiff had a conversation with his nephew which caused him to make inquiry as the result of which he learned that Wishard had been receiving royalties in large amounts since January 1938. The present action was commenced June 15, 1951.

Defendants contend that although the judgment of dismissal is final as to them it will not be appealable until the issues have been finally determined as between plaintiff

and Brown. We think the defendants have answered their own argument. They mention the general rule that there can be but one judgment in a case and then add "the only exception to this rule is that separate judgments may be entered as to several defendants where the issues are separate and several as to them." Plaintiff seeks to quiet title to the royalty interest as against the Wishards and Brown. He seeks an accounting and recovery of the royalties received by Wishard and no money judgment against Brown. ■ Section 579 of the Code of Civil Procedure reads: "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper." It was decided in *Rocca* v. *Steinmetz*, 189 Cal. 426 [208 P. 964], that this section authorizes judgment to be entered in favor of some of the defendants while the action proceeds as to others, where a separate and several judgment may be rendered. The judgment is final as to the causes of action for the recovery of money from the Wishards. They saw fit to have that judgment entered. An entirely different cause of action remains involving none of the issues that have been decided. The judgment is appealable. (*Stafford* v. *Yerge*, 139 Cal.App.2d 851 [294 P.2d 721]; *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.*, 41 Cal.2d 785 [264 P.2d 5, 41 A.L.R.2d 1037]; *Beresford* v. *Pacific Gas & Elec. Co.*, 113 Cal.App.2d 622 [248 P.2d 773]; *Howe* v. *Key System Transit Co.*, 198 Cal. 525 [246 P. 39]; *Young* v. *Superior Court*, 16 Cal.2d 211 [105 P.2d 363].)

Another point urged by defendants is that the action involves title to real property owned by the United States and that the government was an indispensable party. *Livermore* v. *Beal, supra,* 18 Cal.App.2d 535, is claimed to be directly in point. That was a case in which it was attempted to quiet the plaintiff's title to an interest in government land without naming the government as a defendant. Here plaintiff does not seek to quiet title to an interest in land but to enforce a claimed constructive trust in the royalties received and to be received under a government lease. Such a judgment would not cloud the title or in any manner affect the ownership of the land by the government. The action is essentially one based upon the theory of contract or breach of duty, as the result of which Harry Wishard took an assignment of royalties as trustee for plaintiff.

As previously mentioned, the present action was the sub-

ject of a former appeal (*South* v. *Wishard, supra,* 123 Cal. App.2d 642). One question was whether the action was triable in Fresno County as an action involving title to real property or should be transferred to Los Angeles County where the Wishards resided. Another question was whether it should be retained in Fresno County because Brown was a resident of that county. It was decided that the present action for royalties already received and to be accumulated is primarily a transitory equitable action to enforce a trust and not one for the recovery of or to quiet title to real property. (See *Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 9 Cal.2d 58 [69 P.2d 155].) Upon the second point it was decided that Brown was named as a defendant for the sole purpose of retaining the action in Fresno County. As incidental to this decision it was also held that the complaint failed to state a cause of action against Brown to quiet title to the claimed royalty interest. The judgment affirmed an order of the trial court transferring the action to Los Angeles County. ■ The decision that the action does not involve the title to or possession of real property is the law of the case and is not subject to reexamination. (*Wells* v. *Lloyd,* 21 Cal.2d 452 [132 P.2d 471].) The United States Government is not an indispensable or necessary or proper party to the action.

■ The next point to be considered is that the facts alleged in the complaint are insufficient to establish the existence of a constructive trust. Defendants argue that on those facts there was no confidential or fiduciary relationship between plaintiff and Wishard and that the allegation that one existed is a mere conclusion. It is unnecessary to analyze the cases cited by defendants on this point, all of which were on facts differing in material respects from the facts alleged in the present case. It is true, of course, that all intimate friends and business associates are not fiduciaries. The allegations of the complaint respecting the relationship between plaintiff and Wishard were of facts and not mere conclusions.

The case pleaded by plaintiff closely resembles in principle *Dabney* v. *Philleo,* 38 Cal.2d 60 [237 P.2d 648], with respect to the creation of a constructive trust resulting from false representations and breach of confidence. (See also *Neet* v. *Holmes,* 25 Cal.2d 447, 465 [154 P.2d 854].) It is alleged that for years plaintiff and Wishard had been associated together occupying the same suite of offices, "advising with each other, over and concerning mutual professional and

business transactions''; they enjoyed an intimate and affectionate regard for each other and there existed between them a strong bond of friendship and trust, as the result of which plaintiff had unlimited confidence in the promises and representations of Wishard. Happily, such relationships are common among lawyers. They exist because each of the associates believes implicitly in the honor, the high principles, truthfulness and integrity of the others. Where the relationship has stood the test of time and long experience it justifies the highest degree of confidence and trust. One who expects and is expected to rely upon the statements of such an associate in matters of mutual concern has a right to believe that they will be the truth with no element of concealment, equivocation or evasion. The standards of character and conduct that are maintained are far higher than those created by close business relationships or intimate personal friendships. Plaintiff has pleaded his implicit trust in Wishard and his unquestioning belief in the truth of the latter's statements. We do not see that he needed to plead more. Anything in addition by way of elaboration would have been evidentiary. The allegation must be deemed to be true. We must assume that it would have support in the evidence. plaintiff would be able to produce. (*Johnson* v. *Clark*, 7 Cal.2d 529, 535 [61 P.2d 767].)

Defendants would have us hold that despite the facts alleged a trial court could not properly determine that the relationship between plaintiff and Wishard was of a confidential and fiduciary character. This would be saying that it is impossible for a confidential relationship to arise out of an association of lawyers such as the one described unless there existed some blood relationship or a measure of helplessness which rendered one associate subservient to the will of another. Any statement to that effect would be contrary to our own well founded belief and shocking to the profession. ██ ''Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.'' (*Estate of Cover*, 188 Cal. 133, 143 [204 P. 583].) ██ Although it is usually found where the relationship exists in fact, if not in law, that there is some blood relationship, this is not a requisite under the code or the case law. (Civ. Code §§ 2223, 2224;[1]

---

[1] ''§ 2223. One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.''

''§ 2224. One who gains a thing by . . . the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.''

*Adams* v. *Talbott*, 61 Cal.App.2d 315, 320 [142 P.2d 775];
*Robbins* v. *Law*, 48 Cal.App. 555, 561 [192 P. 118]; *Bank of
America* v. *Sanchez*, 3 Cal.App.2d 238, 243 [38 P.2d 787];
*Cox* v. *Schnerr*, 172 Cal. 371, 378 [156 P. 509]; *Dalakis* v.
*Paras*, 86 Cal.App.2d 243 [194 P.2d 736]; *Scovill* v. *Guy*, 205
Cal. 386 [270 P. 934]; 25 Cal.Jur. 163-164.)

The complaint alleges facts sufficient to justify a
finding that a constructive trust existed. If Wishard, under
the circumstances alleged, promised South that as an accom-
modation he would organize a corporation for the benefit
of Sumpf and receive compensation therefor for the use
and in the name of South, and if he rendered the services
and received the compensation that was contemplated, he
would have no right to keep the property.

There is an additional reason for holding that on the facts
alleged Wishard would be accountable as a constructive trustee.
He undertook to render a service to South, namely to organize
a corporation for South's client, and to obtain for the use and
benefit of South an amount of compensation that was agreed
upon. He became the agent of South for those purposes and
when the royalty interest was received he had a duty to turn
it over to his principal. The fact that his service to South
was gratuitous is immaterial in view of the allegations as to
the agreement. An agent who has a duty to take title
to property for or in the name of his principal and who takes
it for himself, holds it under a constructive trust. (Civ. Code,
§ 2224; *Neet* v. *Holmes*, 25 Cal.2d 447 [154 P.2d 854]; *Strom-
erson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732]; *Walter H.
Leimert Co.* v. *Woodson*, 125 Cal.App.2d 186 [270 P.2d 95].)

Defendants' contention that the cause of action pleaded
is within the statute of frauds (Civ. Code, § 1624, subd. 4) is
untenable. The action is not based upon an agreement to
hold property in trust for plaintiff nor upon an agreement to
transfer it. As an action to establish a constructive
trust it is not within the statute of frauds. No writing
is required to establish a trust that is created by operation of
law. (Civ. Code, § 852; *Stromerson* v. *Averill, supra*, 22 Cal.
2d 808, 815.)

The crucial question is whether the action is barred by the
statute of limitations. Defendants pleaded this defense and
they rely upon the following facts. The records of the
United States Land Office disclose that Sumpf's assignment to
Wishard was filed July 6, 1935, and that it was approved by
the Secretary of the Interior April 20, 1937. It was in evi-

dence that the assignment was not recorded in the office of the county recorder of Fresno County until January 6, 1938. Defendants contend that plaintiff was charged with knowledge of these facts and that he cannot deny that as early as July 6, 1935, he knew that Sumpf had made an assignment to Wishard. ■ Plaintiff contends, and correctly, that if there was fraudulent concealment of the facts at the time of the transaction and thereafter which caused him to forego an investigation the statute did not commence to run until he discovered the fraud. (*Neet* v. *Holmes, supra,* 25 Cal.2d 447.)

*Arnold* v. *Universal Oil Land Royalty Co.,* 45 Cal.App.2d 522 [114 P.2d 408], is relied upon and discussed at length by defendants as a case claimed to be on all fours with the present case as respects the statute of limitations and as authority for the proposition that plaintiff was at all times chargeable with knowledge of the contents of the land office records. Mrs. Arnold was chargeable with knowledge not only of the contents of the land office records but with knowledge of many other facts which would have been discovered upon slight inquiry. Although she knew for some six years her rights were being ignored and had a duty to make an investigation, she made none and offered no sufficient excuse for not making one. Naturally she could not deny knowledge of facts which were readily available to her.

■ Land office records, like other public records, constitute constructive notice of the facts recorded therein. ■ One who deals in property cannot deny knowledge of the contents of public records which affect the title at the time he engages in his transactions. ■ He is also chargeable with knowledge of matters which come of record later if he has a continuing duty to ascertain all facts that might affect the validity of his title or right. It cannot be questioned that the land office records furnished an accessible means for the discovery of transactions relative to the Sumpf royalty. Assignments of royalty interests under government leases must be filed in the land office (Title 43, Code of Federal Regulations, § 192.141).

■ It is true, of course, that one who comes to court charging fraud after the statutory time for institution of his action has expired but who claims that the statute has been tolled because of his ignorance of the fraud is chargeable with knowledge of all facts which could have been ascertained by a careful and prudent investigation. Mere lack of knowledge

resulting from a failure to make an investigation will not serve as an excuse for the delay. It can be said in the present case that plaintiff could have learned of the Sumpf-Wishard assignment if he had made inquiry either of Sumpf or Caine. These, like the land office records, were available sources of information. It is not questioned that inquiry would have developed the fact that the Sumpf-Caine-Wishard transaction had been carried through in 1933. But the duty to investigate is not an absolute one. One to whom representations of fact are made and who believes them has a right to rely upon them. If they are such as to reasonably prevent him from making an investigation his failure to investigate is excusable. If the excuse is valid he cannot be charged with knowledge of facts that would have been discovered only in the course of an investigation. If by reason of Wishard's representations plaintiff was dissuaded from making any inquiry he is no more to be charged with knowledge of the contents of the land office records than with knowledge of the facts he might have ascertained from Sumpf or Caine. (*Dabney* v. *Philleo, supra,* 38 Cal.2d 60.)

Plaintiff alleges that he was deceived in the summer of 1933 by Wishard's statement that the Caine-Sumpf plan had been abandoned, that he was further deceived by Wishard's statement to the same effect in 1939 and his statement that any interest received from Sumpf was worthless. It is alleged that he believed the statements of Wishard, had implicit faith in his integrity and made no further inquiries as to the facts.

The question is whether we can hold, as a matter of law, that plaintiff had knowledge of facts sufficient to cause a person of ordinary prudence and judgment to make inquiry as to the truth of Wishard's statements. This is usually a question of fact. (*Neet* v. *Holmes, supra,* 25 Cal.2d 447, 466; *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 294 [295 P.2d 113]; *Dabney* v. *Philleo, supra,* 38 Cal.2d 60, 66.) It is not a question to be answered in the affirmative unless the facts are such as to make manifest a duty to investigate as the only reasonable course to be taken consistent with the exercise of ordinary prudence and judgment.

We have reached the conclusion that upon the facts pleaded the question was one of fact and not one to be decided adversely to plaintiff upon demurrer. The one important fact that militates against the contention of plaintiff is that in 1939 Maudine Brown asserted that in 1933 Wishard had assigned to her an interest in royalties. This was a circumstance which,

standing alone, would have excited suspicion that Wishard had received an assignment of royalty from either Sumpf or Caine. However, Brown did not exhibit an assignment and Wishard did not admit having executed one. He resisted her claim. He requested Brown not to record any instrument. This implied that she might hold one, although Wishard at the same time denied having acquired any royalty interest from Sumpf or Caine. But even if he had assigned to Brown some royalty interest it would not necessarily follow that it was out of an interest which he had received from either Sumpf or Caine in consideration of services in the organization of a corporation. And although plaintiff alleges that Wishard did make an assignment in 1933 he does not allege that he knew or that he believed in 1933 that an assignment had been made. Plaintiff believed Wishard's statement that a corporation had not been formed and his assertion that the plan had been abandoned by Sumpf and Caine. Against whatever suspicion the circumstances may have aroused in plaintiff's mind he weighed his confidence in Wishard, his belief in the latter's integrity and truthfulness, and as a result he came to the conclusion that Wishard was telling the truth. And it must be remembered that plaintiff's professed belief that an investigation would not be justified is strengthened by the fact that he made none. We cannot say, to the exclusion of every other reasonable conclusion, that it was unreasonable for plaintiff to accept Wishard's statements as the truth and that in relying upon them he failed to exercise a fair degree of caution and judgment. It will be for the court to determine after all the evidence is in whether plaintiff's delay in taking action was reasonable and excusable. That is not a question to be decided as a matter of law.

Defendants rely upon the doctrine of laches. They say that plaintiff has slept upon his rights and should not be permitted to assert a stale claim. But if, as alleged, the delay was induced by the fraud of Wishard, laches is no more available as a valid defense than is the defense of the statute of limitations. If the statute has been tolled plaintiff has not been guilty of laches. If the facts found upon a trial sustain the defense of the bar of the statute the question of laches will become moot.

 The doctrine of laches does not rest upon the mere lapse of time. There are other tests of its applicability. The usual question is whether the lapse of time has resulted in some detriment to the one who seeks protection under the

doctrine, or will suffer detriment if the right asserted is enforced aaginst him. If he has done nothing or omitted nothing to alter his position with respect to the claim or right asserted, the defense of laches cannot be successfully maintained. (18 Cal.Jur.2d, p. 214; *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 735 [134 P.2d 777].)

No facts are alleged in the complaint from which any detriment to the Wishards could be inferred. They were not developing land for the discovery of oil. They have been required to do nothing and have done nothing with respect to the operation of the government lease. There has been no change in their position and they have incurred no obligation. They have done nothing but collect money. The asserted defense of laches did not provide a sound reason for the order sustaining the demurrer of defendants.

The demurrer to the first cause of action was properly sustained. It was error to sustain it as to the second cause of action and as to the third and fourth which incorporated the allegations of the second.

Although it is alleged that both the Wishards have been receiving the royalty payments and claim to be entitled thereto there is no allegation that Mrs. Wishard was guilty of fraud or that she has or claims any interest in the royalties other than as the wife of Harry. However, defendants have challenged the sufficiency of the complaint on the single theory that it fails to state a cause of action against Harry and no point is made of the fact that Stella is neither charged with fraud nor with knowledge of it.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied December 27, 1956, and the petition of respondents H. A. Wishard and Stella Wishard for a hearing by the Supreme Court was denied January 23, 1957.